UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

NOVA MARITIME B.V.I. LTD.,

        Plaintiff,

    - against -

TRANSVAST SHIPPING CO. LTD.,

        Defendant.

------------------------------------------------------------ X

**MEMORANDUM**
**OPINION AND ORDER**

08 Civ. 6869 (SAS)

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

    On August 4, 2008, this Court authorized the issuance of a process of maritime attachment and garnishment ("PMAG") against all tangible or intangible property belonging to, claimed by or being held for Transvast Shipping Co. Ltd. ("Transvast") by any garnishees in this District, including Deutsche Bank.[1] On August 12, 2008, Nova Maritime B.V.I. Ltd. ("Nova") attached $10,382.87 at Deutsche Bank in the form of an electronic funds transfer ("EFT") originated by Transvast.[2] On October 6, 2009, Nova moved for a judgment recognizing and

---

[1] Rule B Order, August 4, 2008.

[2] Memorandum of Law in Response to Order to Show Cause Why Rule B Maritime Attachment Should Not Be Vacated ("Pl. Mem.") at 1.

1

enforcing an interim arbitration award.

On October 16, 2009, the United States Court of Appeals for the Second Circuit issued *Shipping Corporation of India Ltd. v. Jaldhi Overseas Pte Ltd.*, holding, *inter alia*, that "[b]ecause EFTs in the temporary possession of an intermediary bank are not property of either the originator or the beneficiary under New York law, they cannot be subject to attachment under Rule B."[3] On October 21, 2009, this Court issued an Order in the above captioned action directing Nova to show cause why this Court's PMAG Order should not be vacated and any funds attached as EFTs should not be immediately released.

On November 13, 2009, the Second Circuit issued *Hawknet, Ltd. v. Overseas Shipping Agencies*, holding that *Shipping Corporation of India* applies retroactively.[4] As a result, EFTs may no longer be relied upon to maintain jurisdiction over a defendant that "'is not found within the district'" and that, as a result, a district court "would have to conclude that it can exercise personal jurisdiction over the defendant by some other means."[5] The Second Circuit remanded the action "to the District Court with instructions to enter an order to

---

[3] 585 F.3d 58, 71 (2d Cir. 2009).

[4] No. 09 Civ. 2128, 2009 WL 3790654, at *3 (2d Cir. Nov. 13, 2009).

[5] *Id.* (quoting Fed. R. Civ. P. Supp. R. B(1)(a)).

show cause why it should not dismiss the complaint for lack of personal jurisdiction."[6]

On November 17, 2009, Nova submitted a response asserting that Transvast, as originator of the EFT, retained an attachable interest in the attached EFTs under article 4A of the New York Uniform Commercial Code ("UCC")'s "money back guarantee."[7] Nova also argued that the funds originally restrained as EFTs had been deposited into a suspense account and properly reattached thereafter.[8] Finally, Nova contended that this case should be excepted from the retroactive application of *Shipping Corporation of India* due to equity considerations.[9]

Having reviewed Nova's response and considered its arguments in light of *Shipping Corporation of India* and *Hawknet*, Nova's arguments are rejected in their entirety. Section 402, known as the "money bank guarantee" provision, provides in pertinent part:

> (3) . . . With respect to a payment order issued to a receiving bank other than the beneficiary's bank,

---

[6] *Id.*

[7] *See* Pl. Mem. at 5-7.

[8] *See id.* at 4.

[9] *See id.* at 7-10.

> acceptance of the order by the receiving bank obliges the sender to pay the bank the amount of the sender's order . . . . The obligation of that sender to pay its payment order is excused if the funds transfer is not complete . . . . (4) If the sender of a payment order pays the order and was not obliged to pay all or part of the amount paid [because the funds transfer was not completed], the bank receiving payment is obliged to refund payment to the extent the sender was not obliged to pay.[10]

Put simply, "under Section 402(3), the sender's obligation to pay the receiving bank is excused in the event that the transfer is not completed. If payment has already been made, a sender can seek a refund from the bank it paid under Section 402(4)."[11] In *Grain Traders Inc. v. Citibank, N.A.*, the Second Circuit concluded that, generally, privity is required between the party seeking a refund and the bank from which it seeks that refund.[12] In accordance with that ruling, the Second Circuit affirmed the district court's dismissal of an originator's lawsuit under

---

[10] N.Y. U.C.C. § 4-A-402(3), (4).

[11] *Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 101 (2d Cir. 1998).

[12] *See id.* at 102 ("[W]e . . . conclude that § 4-A-402 allows each sender of a payment order to seek refund *only* from the receiving bank it paid," citing policies reasons such as Article 4-A's "primary goal[ ] to promote certainty and finality so that 'the various parties to funds transfers [will] be able to predict risk with certainty, to insure against risk, to adjust operational and security procedures, and to price funds transfer services appropriately.'" (quoting N.Y. U.C.C. § 4-A-102, cmt.) (emphasis added)).

4

section 402 where it was brought against an intermediary bank.[13]

There is no privity between Transvast and Deutsche Bank. Transvast, as originator, issued a payment order to its bank to transfer funds.[14] Transvast's bank then issued a payment order to Deutsche Bank, an intermediary bank, to transfer the funds to the beneficiary. Under sections 402(3) and (4) and *Grain Traders*, Transvast is in privity with its bank only and has no attachable property interest in the right of refund from Deutsche Bank.[15]

"Under New York law, . . . the situs of intangible property, such as beneficial interests, is 'the location of the party of whom performance is required by the terms of the contract.'"[16] Payment orders are akin to contracts in that the

---

[13]   *See id.*

[14]   Nova does not identify the originator bank, but does not dispute that Deutsche Bank is an intermediary bank for purposes of this transfer.

[15]   Nova does not argue that section 402(5) applies. Section 402(5) provides that where an intermediary bank cannot give a refund to an originator's bank because the intermediary is not permitted to do so by operation of law or otherwise suspends payments, then the "first sender in the funds transfer that issued an instruction requiring routing through that intermediary bank is subrogated to the right of the bank that paid the intermediary bank to refund as stated in subsection (4)." N.Y. U.C.C. § 4-A-402(5). Even if Nova had raised this claim, it fails for the reasons set forth in this Court's opinion in *Consub Delaware L.L.C. v. Schahin Eugenharia Limitada*, No. 06 Civ. 13153, Slip op. 8-12 (S.D.N.Y. Dec. 15, 2009).

[16]   *EM Ltd. v. Republic of Argentina*, No. 03 Civ. 2507, 2009 WL 2568433 (S.D.N.Y. Aug. 18, 2009) (holding that funds frozen in New York were

acceptance of the order by the receiving bank "obliges" the sender to pay the bank the amount of the sender's order and, if the sender is not obliged to pay for some reason, the bank receiving payment is "obliged" to refund payment.[17] As applied to the money back guarantee, the party who is required to issue a refund to the originator is the intermediary bank. However, there is no contractual relationship between the originator and the intermediary bank. Thus, the intermediary bank owes a refund only to the entity that sent the EFT to it in the first place – the *originator's bank*.[18] Then, the originator's bank owes performance – *i.e.*, a refund – to the originator.[19] The originator is only in a contractual relationship with its bank. Thus, it is the location of the *originator's bank* that is relevant because the originator's bank is the party that owes performance to the originator. Under this rationale, Deutsche Bank owes performance only to Transvast's bank. In turn, Transvast's bank owes performance to Transvast. As a result, the situs of

---

subject to attachment by New York courts) (quoting *ABKCO Indus., Inc. v. Apple Films, Inc.*, 39 N.Y.2d 670, 675 (1976)).

[17]   N.Y. U.C.C. § 4-A-402(3) & (4). *Cf. In re Bennett Funding Group, Inc.*, 146 F.3d 136, 139 (2d Cir. 1998) ("[W]hen a depositor deposits funds into a general account he parts with title to the funds in exchange for a debt owed to him by the bank, thereby establishing a standard debtor-creditor relationship.").

[18]   *See Grain Traders, Inc.*, 160 F.3d at 102.

[19]   *See id.*

Transvast's beneficial interest is the location of its bank. There has been no representation that Transvast's bank is located in this District. Therefore, section 4-A does not create an attachable interest for purposes of Rule B such that this Court has jurisdiction over Transvast. To hold otherwise would serve only to circumvent the Second Circuit's unambiguous intent to eliminate attachments of EFTs in the hands of intermediary banks in this District.[20]

Nova's remaining arguments also fail. Nova's subsequent service of process on funds moved to a suspense account at Deutsche Bank does not cure the underlying jurisdictional defect.[21] Nova further claims that *Shipping Corporation*

---

[20] There is no indication that when the Second Circuit issued *Shipping Corporation of India* it considered the possibility that defendants retained an attachable property interest in EFTs in the possession of intermediary banks through the UCC money back guarantee provision. The Second Circuit is aware that the provision exists and that it may create attachable property interests, as this issue has been raised before. *See Consub Delaware LLC v. Schahin Engenharia Limitada*, 543 F.3d 104, 112 n.4 (2d Cir. 2008) (noting that plaintiff had raised the money back guarantee argument on appeal but stated that "[b]ecause *New York law does not apply here* to the issue of permissibility of the attachment of the EFT funds, we do not reach questions of [defendant]'s property interest in the funds under New York law" (emphasis added)), *abrogated on other grounds by Shipping Corp. of India*, 585 F.3d at 71. The Circuit has now decided that New York law does apply. Nonetheless, for the reasons discussed above, the money back guarantee provisions do not create an attachable property interest in New York.

[21] *See HC Trading Int'l Inc. v. Crossbow Cement, SA*, No. 08 Civ. 11237, 2009 WL 4337628, at * 1 (S.D.N.Y. Dec. 2, 2009) ("No alchemy by the parties transformed EFTs that do not provide personal jurisdiction over the defendant under Rule B into a basis for this Court's jurisdiction over the defendant."); *Calais Shipholding Co. v. Bronwen Energy Trading Ltd.*, No. 07 Civ.

*of India* should not be applied retroactively because Nova relied on the Second Circuit's prior decisions upholding maritime attachments and now will be unable to secure its underlying claims elsewhere. The Court is not swayed that equity considerations require the funds remain attached, particularly where the initial attachment was infirm and Nova has been unable to show that this Court has any basis to exercise jurisdiction over Transvast to maintain the attachment or grant Nova's motion to recognize and enforce the arbitration award.[22] The funds have been attached nearly sixteen months. There is no reason to continue the attachment any longer, particularly where Nova is free to seek leave to amend its Complaint if, at some later date, it is able to determine that Transvast has attachable property in the District.

Plaintiff's motion to recognize and enforce the arbitration award is

---

10609, 2009 WL 4277246, at *3 (S.D.N.Y. Nov. 24, 2009) ("The Court declines to manipulate the Second Circuit's decision in *Shipping Cor. of India* by permitting a party to benefit from the tainted results of an improper attachment."); *Kolmar Group AG v. Traxpo Enter. Private Ltd.*, 07 Civ. 10343, Slip Op. at 3 (S.D.N.Y. Nov. 18, 2009) ("[T]he attached funds were not validly 're-attached' once they were transferred into suspense accounts upon this Court's order of attachment.'").

[22] See *Fedcom Europe Ltd. v. Spark Trading DMCC*, No. 08 Civ. 10717, 2009 WL 4042749, at *1 (S.D.N.Y. Nov. 23, 2009) (rejecting a similar retroactivity argument, stating that "[i]n fact, the *Hawknet* decision strongly suggests just the opposite: when a ruling establishes that courts lack jurisdiction over a type of case, they are unable, without exception, to consider the merits of such cases.").

denied.

IT IS HEREBY ORDERED that the ex parte Order for Process of Attachment and Garnishment issued in this action be vacated.

IT IS FURTHER ORDERED that any funds attached as EFTs pursuant to that Order be immediately released.

IT IS FURTHER ORDERED that the Complaint is hereby dismissed without prejudice. The Clerk of the Court is directed to close this motion (Docket No. 12) and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:	New York, New York
	December 16, 2009

## - Appearances -

**For Plaintiff:**

Christopher Carlsen, Esq.
Nicholas Magali, Esq.
Clyde & Co US LLP
405 Lexington Avenue
New York, NY 10174
(212) 710-3900

**For Defendants:**

Richard Vaughan Singleton, II, Esq.
Thomas Hunt Belknap, Jr., Esq.
Blank Rome LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
(212) 885-5000